**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

TIMOTHY SANDERS,

    Plaintiff

v.

CASTANEDA, et. al.,

    Defendants

Case No.: 2:22-cv-01373-APG-EJY

**Order (1) Partially Granting Defendants' Motion for Summary Judgment, (2) Denying Plaintiff's Motion for Summary Judgment, and (3) Denying Plaintiff's Motion to Take Judicial Notice**

[ECF Nos. 66, 84, 87, 104]

Timothy Sanders was an inmate at Southern Desert Correctional Center (SDCC) during the events at issue in this case. He sues Victor Castaneda and other SDCC staff for claims arising from their attempt to transfer him to a hospital in January 2022. After screening the claims under the Prison Litigation Reform Act (PLRA), four claims remain: (1) First Amendment retaliation, (2) Eighth Amendment deliberate indifference to serious medical needs, (3) Eighth Amendment excessive force, and (4) Eighth Amendment sexual assault. The parties move for summary judgment on all claims. ECF Nos. 66, 87. Sanders filed his response to the defendants' motion for summary judgment as a motion to dismiss. ECF No. 84. I therefore deny that as a motion and construe it as a response. Sanders also moves for me to take judicial notice of a recent case to support his argument. ECF No. 104.

I grant the defendants' motion as to the retaliation claim because Sanders did not exhaust his administrative remedies. I also grant that motion as to the excessive force claim because the defendants were restoring discipline and order in good faith. I deny the rest of the defendants' motion. I deny Sanders' summary judgment motion because he has not shown there is no

genuine issue of material fact on his claims.  Finally, I deny Sanders' motion to take judicial notice because it is not proper to take judicial notice of case law as he requests.

**I.      BACKGROUND**

On January 5, 2022, Sanders fell and cut his knee.[1] ECF Nos. 66-2 at 64; 66-6 at 7-8. Nonparty Officer Jones called a "man down," requesting medical attention. ECF No. 66-6 at 8. A medical record reflects that Sanders was referred to the hospital emergency room for wound evaluation at 10:10 p.m. but does not indicate that he was given medical care or bandages at that time. ECF No. 101-1 at 80.[2]  Defendant Sergeant Kelly ordered Sanders to go to the hospital, against Sanders' wishes, and defendant Officers Reese and McCarthy drove the transport van. ECF Nos. 66-2 at 2, 4; 66-6 at 10.

Sanders alleges that he passed out from blood loss and woke up in the back of the van. ECF No. 66-6 at 11.  He alleges that when he woke up, he began to have an asthma attack and a panic attack at the same time and requested that Reese and McCarthy return for his asthma inhaler or turn on the air conditioning so he could get fresh air. *Id.* at 12-13.  Reese and McCarthy did not do so, and Sanders believed he had no choice but to "cause a commotion" by "shouldering the door" of the van. *Id.* at 14-15.  Fearing the van would tip over, Reese and McCarthy pulled over and called nonparty Sergeant Mustafaa, who ordered them to return to the prison. ECF No. 66-2 at 4, 8.

When they arrived back at the prison, Sanders continued kicking the van and, while still in restraints, kicked out the van's grate and window panel. ECF Nos. 66-2 at 4-12, 62-63; 66-6 at

---

[1] A medical record reflects that he cut both knees, but the parties mostly discuss the cut on Sanders' left knee and do not dispute a cut on his other leg. ECF No. 101-1 at 178.

[2] The defendants originally filed an unreadable version of the medical records under seal. ECF No. 68-1.  They later refiled a readable version under seal. ECF No. 101-1.

2

17.  Nonparty Officer Bailey deployed OC spray on Sanders,[3] who jumped out of the van window. ECF Nos. 66-2 at 2-12; 66-6 at 28.  Sergeant Kelly and Officers Reese, McCarthy, Bailey, and Castaneda then restrained Sanders on the ground. ECF Nos. 66-2 at 2-12; 66-6 at 18. Sanders alleges that the officers stepped on his wounds and jumped on his ankles and legs while they held him. ECF 66-6 at 18.  He also alleges that Castaneda reached under Sanders' underwear, pulled his genitals, and inserted a finger in his buttocks. *Id.* at 19.  A nurse administered a tranquilizer to Sanders and prison staff removed his clothes because they had OC spray on them. *Id.* at 19; ECF No. 66-2 at 3-4, 23.  A medical record shows that at 1:10 a.m. on January 6, presumably after the van had returned, Sanders received a pressure bandage and medication for his wound and had abrasions on his face and legs. ECF No. 101-1 at 80, 177. Sanders spent the night in the infirmary and went to the hospital in the morning. ECF No. 66-2 at 4, 6.

Sanders called the Prison Rape Elimination Act (PREA) hotline and filed grievances to report being sexually assaulted by Castaneda. *Id.* at 19.  He alleges that in retaliation, Castaneda destroyed his belongings. ECF No. 66-5 at 27.  He also filed a grievance alleging McCarthy and Reese threatened to destroy his property. *Id.* at 22; ECF No. 66-2 at 35-36.

Based on these allegations and events, Sanders filed this lawsuit.  All parties move for summary judgment on all claims.

**II.    ANALYSIS**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[3] Sanders originally alleged that Reese sprayed him, but he does not contest the defendants' claim that Bailey sprayed him. ECF No. 66-6 at 18.

56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quotation omitted).

**A. I grant the defendants summary judgment on the First Amendment retaliation claim because Sanders did not exhaust his administrative remedies.**

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies prior to filing a lawsuit is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) (en banc). If the inmate's failure to exhaust is not clear from the face of the complaint, the proper procedure

for raising non-exhaustion is moving for summary judgment under Federal Rule of Civil Procedure 56. *Id.* at 1169.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  That means the inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009).  "[A] prison's own grievance process, not the PLRA, determines how detailed a grievance must be to satisfy the PLRA exhaustion requirement." *Id.* at 1120 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

Failure to exhaust is an affirmative defense. *Jones*, 549 U.S. at 216.  Therefore, the defendants bear the burden of proving the inmate failed to exhaust an available administrative remedy. *Albino*, 747 F.3d at 1172.  If the defendants do so, the burden shifts to the inmate to show "there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quotation omitted).  The defendants bear the "ultimate burden" of proving a failure to exhaust. *Id.*

The Nevada Department of Correction's (NDOC) grievance process is governed by Administrative Regulation (AR) 740. *See generally* ECF No. 66-10.  There are three levels to the process: an informal grievance, a first level grievance, and a second level grievance. *Id.* at 10-15. "Retaliation is a grievable issue." *Id.* at 6.

5

Sanders filed three grievances that alleged the defendants[4] destroyed his property in retaliation for filing grievances against them and calling the PREA hotline: grievances 32456,[5] 34139, and 34269. ECF No. 66-5 at 20-21, 22, 27.  Sanders did not appeal grievances 32456 or 34139 to the final level even though they were referred to the inspector general. *Id.* at 22, 27. Although he resubmitted grievance 34269, it was untimely, and he backdated it. *Id.* at 20-21.  He did not complete all three levels of the process for these grievances and therefore did not exhaust his administrative remedies.  I thus grant the defendants summary judgment, and I deny Sanders summary judgment, on his retaliation claim.

**B.  I deny the defendants summary judgment on the Eighth Amendment deliberate indifference claim because there is a genuine issue of material fact as to whether the defendants were subjectively indifferent.**

1.  Administrative remedies were unavailable to Sanders.

An inmate need only exhaust available remedies and "need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016).  "[A]n administrative remedy is not available if prison officials inform the prisoner that he cannot file a grievance." *Williams v. Paramo*, 775 F.3d 1182, 1192 (9th Cir. 2015) (quotation omitted).

Sanders filed grievance 33533, which encompassed the remaining claims.[6] ECF No. 66-6 at 7-27.  The NDOC denied this grievance three times because Sanders did not include Form 3098 as required and barred him from refiling the grievance again, noting, "[t]his constitutes

---

[4] The defendants listed in the screening order are Reese and Castaneda. ECF No. 12 at 10. However, in Sanders' response brief, he alleges the defendants for this claim were McCarthy and Castaneda. ECF No. 84 at 1.  My decision does not turn on this difference.

[5] All grievances are numbered with a 200631 prefix.  I omit this prefix for ease of reading.

[6] Sanders also filed grievance 33567, which also encompasses the remaining claims, but he did not appeal this grievance and therefore did not exhaust administrative remedies on this basis.

abandonment of your claim, as you have exhausted the grievance process. THIS GRIEVANCE CANNOT BE RESUBMITTED." ECF Nos. 66-5 at 28-29; 66-6 at 2, 6, 28, 34, 80. Sanders argues he did not receive Form 3098 and thus could not progress with this grievance.

AR 740 does not state that an inmate may attempt to submit a grievance only three times before it is abandoned. It anticipates abandonment only if an inmate refuses to sign and date a grievance form or if he does not submit an informal grievance within the designated time frame. ECF No. 66-10 at 6, 12. In replies to other grievances, the prison states that "offenders are limited to three (3) DOC-3098 per grievance claim. For claims that exceed more than three (3) DOC-3098, the Offender will have the documents confiscated and placed in their grievance file with no further actions taken." ECF No. 66-5 at 5, 9. AR 740 does not state a policy that supports this practice. By informing Sanders that he could no longer resubmit a grievance, the prison effectively made the administrative process unavailable to him. *See Satterwhite v. State*, No. 3:24-CV-00175-MMD-CLB, 2025 WL 3043524, at *3-4 (D. Nev. Oct. 31, 2025).[7]

    2.  <u>There is a genuine issue of material fact as to whether the defendants were</u>

        <u>subjectively indifferent to Sanders' medical needs.</u>

The defendants allege they are entitled to qualified immunity on Sanders' claim they were indifferent to his serious medical needs. ECF No. 66 at 11-14, 22-24, 27. Qualified immunity protects government officials who allegedly violate constitutional rights from civil liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). To determine whether a state actor is entitled to qualified immunity, courts

---

[7] Sanders asks me to take judicial notice of the *Satterwhite* case. Judicial notice is a vehicle for the court to recognize adjudicative facts, not applicable law, so Sanders' request is improper. Fed. R. Evid. 201. Nevertheless, I address his citation to *Satterwhite*.

ask "(1) whether the official's conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the violation." *Carley v. Aranas*, 103 F.4th 653, 659 (9th Cir. 2024) (quotations omitted). If the answer to either question is no, the official is entitled to qualified immunity. *Id.*

The government is obligated "to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "[D]eliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment's prohibition on cruel and unusual punishment. *Id.* at 104. To establish a claim for deliberate indifference to serious medical needs, a plaintiff must show (1) a "serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) the defendant was subjectively "deliberately indifferent" to the need. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotations omitted). This second prong requires that the defendant knew of and disregarded "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Sanders alleges that Kelly, Reese, and McCarthy were deliberately indifferent to his medical needs because they did not bandage his bleeding leg before taking him to the hospital, causing him to lose consciousness on the van floor. The defendants argue that they did not subjectively perceive a health risk to Sanders because they relied on the expertise of medical staff, who chose not to bandage Sanders' leg and instead referred him to the hospital. They do not argue that Sanders' leg wound did not present a serious medical need and do not present evidence rebutting that Sanders lost consciousness.

The Ninth Circuit has held that prison staff did not act with deliberate indifference where they reasonably relied on the expertise of the prison's medical staff who were actively assessing

8

the situation. *Lemire v. Cal. Dep't. of Corr. and Rehab.*, 726 F.3d 1062, 1084 (9th Cir. 2013). But here the defendants do not present evidence that they relied on medical staff before Sanders left on his ill-fated hospital transfer. Kelly notes in his report that "[i]nmate was taken to medical for further evaluation, then referred to the hospital." ECF No. 66-2 at 5. Reese and McCarthy do not report on Sanders' condition before leaving for the hospital. *Id.* at 8-11. No defendant presents evidence that they subjectively relied on the medical staff's determination not to bandage his leg before transport, so there is a genuine issue of material fact as to whether they deliberately disregarded a medical risk to Sanders.

At the time of the incident, it was clearly established that a correctional officer may not "purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) ("A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established.") (overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)). Because Sanders alleges the defendants purposefully ignored or failed to respond to his observable, serious physical injury, the defendants are not entitled to qualified immunity on this claim. Viewing all facts in the light most favorable to Sanders, a reasonable jury could find that the defendants were deliberately indifferent under the Eighth Amendment. I thus deny the defendants summary judgment. On the other hand, viewing all the facts in the light most favorable to the defendants, a reasonable jury could find that the defendants were not deliberately indifferent, so I deny Sanders summary judgment on his deliberate indifference to medical needs claim.

/ / / /

/ / / /

9

3.  Punitive damages are available against the defendants because there is a genuine issue of material fact as to whether they acted with malice.

Punitive damages may be awarded under § 1983 if the defendants' conduct was malicious, oppressive, or in reckless disregard of the constitutional rights of others. *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005).  The defendants argue punitive damages should not be available because there is no evidence that they were deliberately indifferent to Sanders' medical needs, let alone that they acted with malice.

There is a genuine issue of material fact as to whether the defendants were subjectively indifferent, and if they were, whether they had a culpable mental state.  Viewing the facts in the light most favorable to Sanders, a reasonable jury may find that the defendants' actions warrant punitive damages.  Alternatively, viewing the facts in the light most favorable to the defendants, a reasonable jury may find that punitive damages are not justified.  I therefore deny summary judgment for both parties regarding punitive damages on this claim.

**C.  I grant the defendants summary judgment on the Eighth Amendment excessive force claim because they were acting to restore discipline and order.**

Sanders' grievance 33533 addressed his claim of excessive force. ECF No. 66-6 at 18.  As explained above, Sanders exhausted his available administrative remedies for this grievance because the prison denied him any further appeals.  Thus, I deny the defendants' request to dismiss this claim for failure to exhaust administrative remedies.  However, the defendants are entitled to qualified immunity on this claim.[8]

---

[8] The defendants for this claim as listed in the screening order are Kelly, Reese, McCarthy, Costello, and Castaneda. ECF No. 12 at 17.  However, in Sanders' response brief, he alleges the defendants are Kelly, Reese, and McCarthy. ECF No. 84 at 1.  My decision does not turn on this difference.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishment. U.S. Const. amend. VIII.  "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quotation omitted).  To establish an Eighth Amendment violation based on a use of force, a plaintiff must show the amount of force used was more than de minimis or otherwise involved force "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (quotation omitted).  Additionally, the plaintiff must show the prison official acted with a culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

When an Eighth Amendment claim alleges that a prison official used excessive physical force, the culpable state of mind inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," rather than a deliberate indifference standard. *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 320-21).

The court considers several factors in determining whether force was applied maliciously and sadistically to cause harm, including: "(1) the extent of the injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).  The question is "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.

11

Sanders argues that the defendants used excessive force when they restrained him after he jumped out of the van in the sally port. The defendants argue that they were justified in using force to restrain Sanders after he had kicked out the van window and jumped through it.

A medical report shows that Sanders suffered minor injuries after returning from the aborted hospital transport, including facial abrasions, a leg abrasion, and multiple small superficial wounds. ECF No. 101-1 at 177. Additionally, Sanders alleges he had road rash. ECF No. 66-6 at 19. Although being restrained may have been painful for Sanders because of his initial wound, there is no evidence he suffered more than superficial injuries from the defendants' use of force. Further, Sanders admits that he was causing a commotion, and even though he was restrained, he kicked out the van's grate and window. ECF Nos. 66-2 at 62-63; 66-6 at 14. The defendants thus needed to use force to maintain order and secure Sanders by restraining him on the ground. No genuine dispute remains that the defendants used force with a good-faith effort to restore discipline, and there is no evidence that they acted maliciously or sadistically.

Even viewing all facts in the light most favorable to Sanders, no reasonable jury could find that the defendants' conduct constituted excessive force under the Eighth Amendment. Because there was no constitutional violation, the defendants are entitled to qualified immunity. I thus grant the defendants summary judgment, and I deny Sanders summary judgement on his excessive force claim.

/ / / /

/ / / /

/ / / /

/ / / /

12

**D. I deny the defendants' and plaintiff's summary judgment motions on the Eighth Amendment sexual assault claim because there is a genuine issue of material fact as to whether the assault occurred.**

    1. <u>Sanders successfully exhausted his administrative remedies on this claim.</u>

Under AR 740.03, when a grievance is referred to the Inspector General, the "inmate must complete all three (3) steps of the grievance process even if his claim is being investigated." ECF No. 66-11 at 5. A prisoner may appeal the result of the Inspector General's investigation of a sexual assault allegation. *Id.* at 8. The rules do not clearly state that, to exhaust administrative remedies for a sexual assault claim, the inmate must appeal the investigation results. For grievances alleging sexual abuse, "[a]t any level of the administrative process, including the final level, if the inmate does not receive a response within the time allotted for reply, . . . the inmate may consider the absence of a response to be a denial at that level." *Id.* "The time limit for a response to the inmate for the Second Level grievance is sixty (60) calendar days, not including transmittal time, from the date the grievance is received by the grievance coordinator to the date it is returned to the inmate." ECF No. 66-10 at 15.

Sanders alleged he was sexually assaulted in grievance 33533. As stated above, the defendants told him he could not resubmit this grievance a fourth time, so remedies were unavailable. Sanders also filed grievance 33568, alleging that Castaneda stuck "his gloved hand inside my rectum. He pulled my penis and balls." ECF Nos. 66-5 at 23; 66-8 at 3. He refiled the grievance for tracking purposes because it alleged sexual abuse and received a first level response partially granting the grievance and referring the matter to the Inspector General. ECF Nos. 66-5 at 23; 66-8 at 2-9. Sanders appealed to the second level, objecting to his grievance

13

being partially granted. ECF No. 66-5 at 24.  This grievance is marked "returned" on June 10, 2022. *Id.*

The prison did not respond within 60 days, so Sanders could take their non-response as a denial.  Therefore, he exhausted grievance 33568 on August 9, 2022, 60 days after his second appeal.  He filed his complaint on August 24, 2022, so he properly exhausted his administrative remedies for the sexual assault claim before he filed his suit.

   2. <u>There is a genuine issue of material fact as to whether the sexual assault occurred.</u>

"Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment." *Wood v. Beauclair*, 692 F.3d, 1041, 1046 (9th Cir. 2012).  "Where there is no legitimate penological purpose for a prison official's conduct, courts . . . presume[] malicious and sadistic intent." *Id.* at 1050.  "[S]exual contact between a prisoner and a prison guard serves no legitimate role and is simply not part of the penalty that criminal offenders pay for their offenses against society." *Id.* (simplified).  In sexual contact cases, there is no lasting physical injury requirement because the only requirement is that the officer's actions be offensive to human dignity. *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000).

Sanders alleges that Castaneda sexually assaulted him by grabbing his genitalia and putting his finger up his rectum while being detained after he jumped out of the van window. Castaneda claims this did not occur.  There is no video evidence of this encounter,[9] but the prison conducted an investigation. *See generally* ECF No. 66-2.  All officers who were at the

---

[9] Sanders argues the defendants should have videoed the encounter as part of a planned use of force under Administrative Regulation 405. ECF No. 66-9 at 6.  Even if I found that the prison violated its own policy by not filming the event, there is no liability under § 1983 for a violation of internal prison policy. *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (quotation omitted).  Sanders also argues that the defendants destroyed the tape and should be sanctioned for spoliation, but he did not move for spoliation nor present evidence supporting his claim.

14

scene said that Castaneda did not sexually assault Sanders, and the investigator found Sanders' allegations were unsubstantiated. *Id.* at 22-24, 26-29, 33. Viewing all the facts in the light most favorable to Sanders, a reasonable jury could believe his version of events. Alternatively, viewing all the facts in the light most favorable to Castaneda, a reasonable jury could believe his version of events. Therefore, there remains a genuine question of material fact as to whether Castaneda sexually assaulted Sanders, so I deny summary judgment for both parties.

                3.  <u>Punitive damages are available against Castaneda because there is a genuine issue of material fact whether he acted with malice.</u>

There is a genuine issue of material fact as to whether the sexual assault occurred, and if it did, whether Castaneda had a culpable mental state. Viewing the facts in the light most favorable to Sanders, a reasonable jury may find that Castaneda's actions warrant the imposition of punitive damages. Alternatively, viewing the facts in the light most favorable to Castaneda, a reasonable jury may decide not to award punitive damages. I therefore deny summary judgment for both parties.

## III.    CONCLUSION

I THEREFORE ORDER that the defendants' motion for summary judgment **(ECF No. 66) is GRANTED IN PART**. I grant the defendants summary judgment on Sanders' claims for First Amendment retaliation and Eighth Amendment excessive force. I deny summary judgment as to the remaining claims.

I FURTHER ORDER that Sanders' motion for summary judgment **(ECF No. 87) is DENIED**.

I FURTHER ORDER that Sanders' motion to dismiss **(ECF No. 84) is DENIED** because I treat it as a response**.**

I FURTHER ORDER that Sanders' motion to take judicial notice **(ECF No. 104) is**

**DENIED** because it is not proper to request judicial notice of case law.

DATED this 3rd day of March, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

16